# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

**MEMO ENDORSED**

Direct Number: (212) 326-3604
jtambe@jonesday.com

February 4, 2016



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/10/16

**VIA ECF & ELECTRONIC MAIL**

The Honorable Richard J. Sullivan
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Loreley Fin. (Jersey) No. 3 Ltd. et al. v. Wells Fargo Securities LLC et al.*,
1:12-cv-03723 (RJS)

Dear Judge Sullivan:

We represent Defendants Wells Fargo Securities, LLC, Wells Fargo Bank, N.A., Structured Asset Investors, LLC, Longshore CDO Funding 2007-3, Ltd., and Harding Advisory LLC in the above action. Pursuant to F.R.C.P. 14(a) and the Court's Individual Rules, we request a pre-motion conference to seek leave to file a third party complaint (the "Third Party Complaint") against IKB Deutsche Industriebank AG ("IKB") for contribution. A proposed Third-Party Complaint is annexed as Exhibit A. Defendants deny all liability to Plaintiffs. In the unlikely event that Defendants are found liable, for the reasons outlined below and set forth in the proposed pleading, that liability must be borne in whole or in substantial part by IKB.

**I.  Brief Background**

The "Loreleys", including Plaintiffs, are offshore shell purchasing entities that were created and run by IKB, a major German bank that failed in the financial crisis. In the years preceding the crisis, IKB and its subsidiary IKB CAM directed and advised the Loreleys to purchase billions of dollars in CDO securities, including those at issue here. The Loreleys did not rely on Defendants for investment advice and analysis; rather, the Loreleys relied entirely on IKB in making the investments at issue. IKB was appointed the "investment advisor" to the Loreleys and in such capacity, upon information and belief, assumed a duty of care, duty of loyalty, and similar fiduciary duties to the Loreleys. IKB also earned fees for such advisory services.

If any party is to blame for the Loreleys' investment losses, therefore, it is IKB and not Defendants. As Defendants allege in the proposed pleading, IKB breached its duties in vetting and recommending the CDO investments, which breaches entirely caused or substantially contributed to the Loreleys' losses. Specifically:

- *IKB failed to disclose the basic facts underlying Plaintiffs' claims.* IKB knew or should have known, and apparently, according to the allegations in the First Amended Complaint, failed

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Hon. Richard J. Sullivan
February 4, 2016
Page 2

to disclose to the Loreleys, key facts that form the foundation of Plaintiffs' creative fraud claims, including the contentions regarding (i) Magnetar's investment strategy concerning "Constellation" CDOs, (ii) the collateral portfolio and Defendants' marks and pricing on the same, and (iii) CDO investors' ability to provide input on the structure of the deal and the composition of its assets, a fact underscored by *IKB's own demands* that the CDO and its portfolio conform to a certain structure before closing.

- *IKB failed to further inquire on the key information before making its investment recommendations.* IKB was a sophisticated investment advisor with knowledge of key facts and risks. As Loreleys' investment advisor, IKB would be liable to the Plaintiffs for any failure to conduct further inquiry on the issues now claimed to be critical to Plaintiffs' investment, such as the precise roles or structuring activities of the CDOs' other investors, including Magnetar, or more details concerning the (fully disclosed) midprime and subprime securities backing the CDO transactions.

IKB's breaches did not happen in a vacuum. As Defendants will allege, IKB financed the Loreleys' CDO purchases through a complex commercial paper conduit called Rhineland Funding Capital Corporation ("Rhineland"). IKB's investment strategy was to borrow at lower short-term rates in the commercial paper markets, through Rhineland, and invest those funds in higher-yielding, long-term CDO investments, through the Loreleys. As the sponsor of the Rhineland program, IKB was ultimately responsible for arranging the funding and asset selection for the Loreleys' CDO investments, all the while appropriating for itself, through investment advisory fees, the difference between the interest paid out by Rhineland and the interest received by the Loreleys. IKB also provided liquidity support for the program pursuant to which it committed to fund the Loreleys if Rhineland could not refinance in the commercial paper market. Through its Rhineland-Loreley investment strategy, IKB was over-exposed to the US residential mortgage market, and when that market crashed, so did IKB's investment gambit. By the summer of 2007, Rhineland collapsed, along with IKB itself – prompting a financial rescue from the German government. IKB's management was prosecuted for financial fraud and its financial statements were substantially retracted.

A wave of suits followed IKB's collapse, as the Loreleys and the remnants of IKB sought to lay blame on third parties, like Defendants, for the investment decisions of IKB.

**II.   Defendants' Motion Should Be Granted**

Motions for leave to implead non-parties "should be freely granted to promote judicial efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y. 1984). Defendants' motion should be granted because the proposed claim has merit, joinder of IKB will promote judicial efficiency, and joinder will not unduly prejudice IKB.

JONES DAY

Hon. Richard J. Sullivan
February 4, 2016
Page 3

    First, the proposed claim has merit. As briefly noted above, Defendants' contribution claim is viable because IKB's breaches are substantial and lie at the very core of the Loreleys' claims and losses here.[1] Second, joinder of IKB will promote judicial efficiency by ensuring disclosure of key evidence on the remaining claims and defenses in the main action[2], including IKB's:

- sophistication and capability to assess the value and risks of the securities
- overall investment strategy and role of these investments in that strategy
- knowledge of the key facts and risks at issue
- diligence and further inquiry on the key subjects in dispute
- reliance on any purported misrepresentations and/or omissions
- disclosures to Plaintiffs in connection with the investments, and
- role in mitigating losses and/or assigning the claims or notes at issue.

In other words, IKB's joinder will complete the factual story behind these investments, facilitate summary disposition of the claims and defenses following discovery and, if necessary, provide the jury with a complete chain of events upon which to rest its determinations of liability.

    Finally, joinder will not prejudice IKB. Defendants' motion is timely, filed early in the fact discovery stage, before document production has even commenced. Moreover, IKB cannot be surprised by the Third Party Complaint. Controversies surrounding the Rhineland investment program and IKB's collapse have been known for years, and have been the subject of active litigation involving IKB in New York courts. Moreover, IKB has been or should have been long aware of the Loreleys' claims in this action, and Defendants' interest in obtaining IKB discovery regarding the same.[3] Finally, IKB is already a ubiquitous player in the New York courts, having initiated and litigated an avalanche of lawsuits here over the past five years, asserting claims similar to those asserted by the Loreleys in this action.

---

[1] This Court has jurisdiction over IKB pursuant to C.P.L.R. § 301 and § 302. (Ex. A at 5.)

[2] In response to Defendants' discovery requests on these issues, the Loreleys claim that they have no "possession, custody, or control" over IKB's documents. Of course, IKB is also based in Germany, presenting its own hurdles to obtaining basic, relevant discovery in this action.

[3] Plaintiffs recently offered to make certain discovery from IKB available to Defendants, but limited to items self-selected by the Loreleys and IKB.

JONES DAY

Hon. Richard J. Sullivan
February 4, 2016
Page 4

Defendants respectfully request that the Court grant Defendants' proposed motion and permit joinder of IKB pursuant to the attached Third Party Complaint. We are available to discuss the motion at the Court's convenience.

Respectfully submitted,

Jayant W. Tambe
Howard F. Sidman
Alexander P. McBride
JONES DAY
222 East 41st Street
New York, NY 10017
(212) 326-3939

*Attorneys for Defendants Wells Fargo Securities LLC, Wells Fargo Bank, N.A., Structured Asset Investors, LLC and Longshore CDO Funding 2007-3, Ltd.*

Alex Lipman
Ashley L. Baynham
Brown Rudnick LLP
7 Times Square
New York, NY 10036
(212) 209-4800

*Attorneys for Defendant Harding Advisory LLC*

```
The Court is in receipt of Defendants' pre-motion letter and Plaintiffs'
response.  (Doc. No. 121.) Having considered the proposed Amended
Complaint and the standard under Federal Rule of Civil Procedure 14, the
Court deems Defendants' motion made and GRANTS it.  IT IS HEREBY ORDERED
that Defendants shall file their third-party complaint by February 17,
2016.
```

SO ORDERED
Dated: 2/9/16

RICHARD J. SULLIVAN
U.S.D.J.