UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORELEY FINANCING (JERSEY) NO. 3 LIMITED, *et al.*,

                           Plaintiffs,

-v-

WELLS FARGO SECURITIES, LLC, *et al.*,

                           Defendants.

No. 12-cv-3723 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

On September 11, 2015, Plaintiffs filed their Amended Complaint, in which they allege common law fraud, aiding and abetting fraud, and conspiracy to defraud under New York law and seek damages and rescission. (Doc. No. 84 ("Amended Complaint" or "FAC").) Now before the Court is Defendants' motion to dismiss all counts except for Plaintiffs' cause of action for common law fraud. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case and offers only a short summary of each for the purposes of this motion.[1] Plaintiffs are special-purpose investment entities that invested approximately $163 million in 2006 and 2007 in collateralized debt obligations ("CDOs") known as Octans II CDO ("Octans"), Sagittarius CDO I ("Sagittarius"), and Longshore CDO Funding 2007-3 ("Longshore") that were

---

[1] The facts of this case are set forth in the Court's memorandum and order, dated March 28, 2013, dismissing the complaint (Doc. No. 69 ("2013 Opinion" or "2013 Op.")) and the Second Circuit's opinion, dated July 24, 2015, reversing in part the 2013 Opinion, vacating the judgment, and remanding the case for further proceedings (Doc. No. 73 ("Circuit Opinion" or "Circuit Op.")). In ruling on the motion, the Court has considered Defendants' memorandum of law in support of dismissal (Doc. No. 107 ("Mem.")), Defendants' declaration in support of dismissal (Doc. No. 108), Plaintiffs' memorandum of law in opposition (Doc. No. 112 ("Opp'n")), and Defendants' reply (Doc. No. 113 ("Reply")).

created, marketed, and sold by Wachovia Capital Markets, LLC ("WCM"), Wachovia Bank, N.A. ("WB"), and non-party Wachovia Securities International Limited ("WSIL," and together with WCM and WB, "Wachovia").[2] (FAC ¶¶ 1–2.) Defendant Structured Asset Investors LLC ("SAI"), a Wachovia affiliate, served as collateral manager for Sagittarius and Longshore (*id.* ¶ 23), and Defendant Harding Advisory LLC ("Harding") served as collateral manager for Octans (*id.* ¶ 22). Plaintiffs allege that each Defendant represented that the collateral assets in the CDOs' portfolios would be "carefully and independently selected by the [Collateral] Managers in the interest of the overall success of the CDOs." (*Id.* ¶ 3.) However, with respect to Octans and Sagittarius, Harding and SAI selected highly risky assets at the behest of Magnetar, a hedge fund that invested heavily in credit default swaps ("CDS") and therefore stood to gain significantly from the CDOs' failure. (*Id.* ¶¶ 3–5.) With respect to Longshore, Plaintiffs aver that Wachovia used the CDO as a "private dumping ground for rapidly deteriorating assets" that Wachovia wanted off its books. (*Id.* ¶¶ 6–7.) Between 2007 and 2008, all three CDOs went into default and failed to make payments to Plaintiffs. (*Id.* ¶¶ 119, 163, 191.)

On November 1, 2011, Plaintiffs initiated this suit by filing their complaint in New York State Supreme Court, New York County. (Doc. No. 1 ¶ 3.) On May 10, 2012, Defendants removed the action to this Court pursuant to the Edge Act, 12 U.S.C. § 632, and on March 28, 2013, the Court granted Defendants' motion to dismiss the case in its entirety with prejudice (2013 Op. 1). On July 24, 2015, the United States Court of Appeals for the Second Circuit reversed in part the Court's 2013 Opinion, vacated the judgment of dismissal as to all Plaintiffs, and remanded the case for further proceedings consistent with its opinion. (Circuit Op. 57.) Specifically, the Second Circuit held that the Court erred in dismissing the fraud claim against

---

[2] Defendants Wells Fargo Securities, LLC ("WFS") and Wells Fargo Bank, N.A. ("WFB," and together with WFS, "Wells Fargo") are, respectively, the successors in interest to WCM and WB. (FAC ¶¶ 20–21.)

2

Wachovia and Harding for failure to state a claim upon which relief can be granted. (Circuit Op. 16–38.) While the Second Circuit agreed that Plaintiffs failed to state a claim against SAI, the Second Circuit also concluded that Plaintiffs were entitled to amend their complaint. (*Id.* at 52–56.)

On August 17, 2015, the Court received the mandate from the Second Circuit (Doc. No. 74), and on September 11, 2015, Plaintiffs filed their Amended Complaint (Doc. No. 84). On December 2, 2015, Defendants filed the instant motion (Doc. No. 106), which was fully briefed on December 30, 2015 (Doc. No. 113).

II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the

3

plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' claim for rescission, which is brought against WFS as successor in interest to WCM, and their causes of action for aiding and abetting fraud and conspiracy to commit fraud, which are brought against all Defendants. (Mem. 1.) Defendants do not, however, move to dismiss the fraud claims against any party. The Court considers each of Defendants' arguments in turn.

### A. Rescission

"Under New York law, rescission is an extraordinary remedy" and is "appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 143 (2d Cir. 2000) (brackets and internal quotation marks omitted). Specifically, in order to obtain rescission, "a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *Mina Inv. Holdings Ltd. v. Lefkowitz,* 16 F. Supp. 2d 355, 362 (S.D.N.Y. 1998) (quoting *Babylon Assocs. v. Cty. of Suffolk*, 101 A.D.2d 207, 215 (2d Dep't 1984)). Here, Plaintiffs' claim for rescission is predicated on the same allegations as their claim for common law fraud and is pleaded as an alternative form of relief pursuant to C.P.L.R. § 3002(e). (FAC ¶ 213.)

Defendants initially argue that the rescission claim should be dismissed because of Plaintiffs' failure to adequately allege "the absence of a complete and adequate remedy at law." (Mem. 6.) To be sure, the law is clear that a plaintiff is entitled to rescission only "when there is

lacking [a] complete and adequate remedy at law and where the status quo may be substantially restored," *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 340 (S.D.N.Y. 2012) (quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972)), and accordingly, a claim for rescission "is inconsistent with a claim for damages for fraud," *Navigant Consulting, Inc. v. Kostakis*, No. 07-cv-2302 (CPS) (JMA), 2007 WL 2907330, at *4 (E.D.N.Y. Oct. 4, 2007). Even so, the CPLR expressly provides that plaintiffs may pursue damages for fraud and a claim for rescission in a single proceeding. *See* C.P.L.R. 3002(e) ("A claim for damages sustained as a result of fraud or misrepresentation in the inducement of a contract or other transaction, shall not be deemed inconsistent with a claim for rescission or based upon rescission."). Thus, courts applying New York law in this district routinely allow rescission claims "to survive in the alternative at the pleading stage." *Fertitta v. Knoedler Gallery, LLC*, No. 14-cv-2259 (JPO), 2015 WL 374968, at *12 (S.D.N.Y. Jan. 29, 2015) (collecting cases); *see also Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 557–58 (S.D.N.Y. 2014) (denying motion to dismiss rescission claims that were "pled in the alternative"); *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 506 n.15 (S.D.N.Y. 2013) ("Defendant's argument that rescission here will not ensure that the 'status quo be substantially restored[]' presents factual issues premature at this stage."). Accordingly, Defendants' first argument for dismissal of the rescission claim must be rejected as premature.

Next, Defendants argue that Plaintiffs' rescission claim should be dismissed because the party alleged to have sold the investments in the CDOs to Plaintiffs was WSIL, and not Defendants. (Mem. 6.) Defendants rely heavily on a decision by Judge Pauley, in which the court concluded that "[a] claim for rescission cannot be maintained against a person who was not

a party to the contract." *Steinberg v. Sherman*, No. 07-cv-1001 (WHP), 2008 WL 2156726, at *7 (S.D.N.Y. May 8, 2008). In fact, as Plaintiffs allege – and as the offering circulars submitted by Defendants in connection with this motion confirm – Plaintiffs purchased the notes in Octans directly from WCM (*see* Doc. No. 108-2 at 3; *see also* FAC ¶ 220) and purchased the notes in Sagittarius and Longshore from WCM "through its agent, [WSIL]" (Doc. Nos. 108-3 at 3, 108-4 at 3; *see also* FAC ¶¶ 21 n.2, 220). Because an agent who enters a contract on behalf of a disclosed principal generally binds the principal to the contract, *see, e.g.*, *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991), WCM *was* bound by the pertinent contracts, thus distinguishing this case from *Steinberg*. In any event, where, as here, an action for rescission under New York law is predicated on fraud, the rescission claim may be "applicable against a defrauder not in privity of contract with the victim of the fraud" to the extent the defrauder defendant "induced the victim to make the purchase." *Gordon v. Burr*, 506 F.2d 1080, 1083, 1085 (2d Cir. 1974); *see also Pinter v. Dahl*, 486 U.S. 622, 647 n.23 (1988). That is precisely what Plaintiffs allege in the alternative here. (FAC ¶¶ 212–24; Opp'n 7 & n.7.) Accordingly, the Court finds Defendants' second argument in favor of dismissal of the rescission claim to be equally unpersuasive.

Finally, Defendants argue that Plaintiffs' rescission claim should be rejected as a matter of law because Plaintiffs delayed unreasonably in bringing their claim for the remedy. (Mem. 6–7.) It is true that "[a]n action for rescission must be initiated without unreasonable delay." *Ballow Brasted O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 240 (2d Cir. 2006) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 47 (2d Cir. 1991)). Nonetheless, a plaintiff "need not raise the claim *immediately* upon notice of the fraud but is afforded a reasonable period after notice of the fraud within which to consider whether or not to rescind." *Banque Arabe Et*

*Internationale D'Investissement v. Md. Nat'l Bank*, 850 F. Supp. 1199, 1211 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995). In measuring the reasonableness of a party's delay in bringing suit, courts apply a highly fact-intensive test. *See Ballow*, 435 F.3d at 240 ("The concept that a party's delayed notification must be 'reasonable,' suggests a malleable standard that comports with the overall equitable nature of this remedy."). Thus, "'[o]rdinarily, the question of what is a reasonable time for rescission is a question of fact' . . . that cannot be decided" on a motion to dismiss. *Arthur Props., S.A. v. ABA Gallery, Inc.*, No. 11-cv-4409 (LAK), 2012 WL 2886685, at *3 (S.D.N.Y. July 16, 2012) (quoting *W. Tsusho Co. v. Prescott Bush & Co.*, No. 92-cv-3378 (MBM), 1993 WL 228072, at *4 (S.D.N.Y. June 23, 1993)); *accord Brownstone Inv. Grp., LLC. v. Levey*, 468 F. Supp. 2d 654, 663 (S.D.N.Y. 2007).

So too here. Plaintiffs allege that they did not have notice of the facts demonstrating Defendants' fraudulent scheme until 2010, which explains why they did not file suit until November 1, 2011. (FAC ¶ 200.) While the Court is quite skeptical of Plaintiffs' allegations regarding notice in light of the fact that certain CDOs experienced default as early as October 23, 2007 (*id.* ¶ 163), the Court nonetheless declines to dismiss the rescission claim on this basis at this stage, *see Arthur Props., S.A.*, 2012 WL 2886685, at *3 ("Although a two and a half year delay may well bar any rescission claim here, that cannot be decided on this motion.").

Finding all of Defendants' arguments in favor of dismissal of the rescission claim to be unavailing, the Court denies their motion to dismiss the rescission claim.

### B.  Aiding and Abetting Fraud

Next, the Court turns to Plaintiffs' claim for aiding and abetting fraud under New York law against Defendants. To survive dismissal, Plaintiffs must adequately plead: "(1) the existence of a fraud; (2) [Defendants'] knowledge of the fraud; and (3) that [Defendants]

7

provided substantial assistance to advance the fraud's commission." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). "The particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010); *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292–93 (2d Cir. 2006).

With respect to the first element, Defendants essentially concede the existence of the fraud, since they have not moved to dismiss Plaintiffs' fraud claim. This is hardly surprising, since the Second Circuit – despite this Court's clearly articulated views on this subject in its 2013 Opinion – has now concluded that Plaintiffs have adequately stated claims for fraud against Wachovia and Harding. (Circuit Op. 18.) And while the Second Circuit held that the original complaint failed to sufficiently plead material misrepresentations or omissions attributable to SAI and failed to allege scienter on SAI's part (*id.* at 27–29), the Amended Complaint has rectified these defects. Taking its cues from the Circuit Opinion, the Amended Complaint now points to several alleged misrepresentations made in SAI's sales pitches and in marketing documents it allegedly co-authored (FAC ¶¶ 124–32, 166–73) in which SAI "held itself out . . . to be in charge of selecting assets for" Sagittarius and Longshore, touted its conservative approach to investing, and "misled investors as to its authority over asset selection by failing to disclose Magnetar's influence" with respect to Sagittarius (Circuit Op. 28 (finding similar allegations sufficient with respect to Harding's representations regarding Octans)). Plaintiffs aver that these alleged misrepresentations and omissions were critical to their decisions to invest in Sagittarius and Longshore (FAC ¶¶ 136, 176), and the Court has no basis to conclude that the alleged misrepresentations and omissions were "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance," *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (recognizing that complaint alleging

fraud "may not properly be dismissed" for failure to allege materiality "unless [the alleged misrepresentations or omissions] are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."). Accordingly, when viewed through the prism of the Second Circuit's fraud analysis in the Circuit Opinion, the Amended Complaint sufficiently alleges that SAI made material misrepresentations and omissions to Plaintiffs in connection with the sale of investments in the CDOs.

Plaintiffs also sufficiently allege that SAI made the material misrepresentations and omissions with scienter. Specifically, Plaintiffs point to emails sent between Wachovia and Magnetar, with a "cc" to SAI officer James Burke, in which Magnetar allegedly exercised influence over the assets selected for Sagittarius. (FAC ¶¶ 141, 151.) Although the Court continues to believe that Plaintiffs' largely speculative and innuendo-laden allegations regarding Wachovia's correspondence with Magnetar "simply cannot support a claim for fraud" (2013 Op. 14), the Circuit Opinion forecloses such a finding here. These emails, "together with the structural features of the constellation CDOs that favored Magnetar's supposed long-short strategy," make it "reasonable to infer" that Burke, a "high level employee" of SAI, "knew or should have known" that the statements in the marketing materials were misleading because they misrepresented the role SAI played in selecting collateral and omitted to mention "Magnetar's influence over the CDOs' asset selection." (Circuit Op. 31–32 (finding similar allegations sufficient with respect to Wachovia and Harding).) Accordingly, the Circuit Opinion compels the conclusion that Plaintiffs have pleaded facts that adequately support the inference that SAI,

9

as well as Wachovia and Harding, committed fraud, and thus have adequately alleged the first element of their aiding and abetting claim.[3]

Plaintiffs have also adequately pleaded the second element of their aiding and abetting claim – namely, that all Defendants had knowledge of their co-defendants' underlying fraud. As the Second Circuit has instructed, plaintiffs must "plead the events which they claim give rise to an inference of knowledge" of the underlying fraud in order to satisfy Rule 9(b). *Krys*, 749 F.3d at 129. The "actual knowledge" element "is a distinct requirement from the scienter required to allege the underlying fraud," *Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 344–45 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 138 (2d Cir. 2014), since a complaint's "[a]llegations of constructive knowledge or recklessness are insufficient," *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010) ("Plaintiffs must allege a strong inference of actual knowledge or conscious avoidance; reckless disregard will not suffice."). Nevertheless, "a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the prediscovery stage, so long as [fraudulent] intent may be inferred from the surrounding circumstances." *Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 514–15 (S.D.N.Y. 2014) (quoting *DDJ Mgmt., LLC v. Rhone Grp., LLC*, 78 A.D.3d 442, 443 (1st Dep't 2010)).

---

[3] Although Defendants do not seek dismissal of Plaintiffs' fraud claim, Defendants nonetheless half-heartedly suggest in a footnote that Plaintiffs could not have reasonably relied on these alleged misrepresentations and omissions because of disclaimers in the offering circulars. (Def. Mem. 10 n.6.) However, Defendants fail to reference the specific provisions in the offering circulars on which they premise this argument. In any event, because the reasonableness of Plaintiffs' reliance is a highly fact-intensive inquiry, Defendants' arguments are better suited to a motion for summary judgment. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive."). And while Defendants also allude to perceived weaknesses in Plaintiffs' allegations of fraud against SAI with respect to the Longshore transaction (Mem. 10–11), the Court declines to address these arguments in light of Defendants' failure to move to dismiss the fraud claim. Needless to say, Defendants may pursue such arguments more fully on summary judgment.

Here, Plaintiffs have alleged that SAI and Harding dumped toxic collateral into the CDOs at Magnetar's and Wachovia's behest. (FAC ¶¶ 93–107, 141–46, 151, 155–56.) At the same time, Plaintiffs allege that SAI and Harding were aware of (1) Wachovia's statements in the marketing materials regarding the responsibilities assigned to the collateral managers and the expected quality of the CDOs, as well as (2) Wachovia's failure to mention Magnetar's influence in choosing collateral (*id.* ¶¶ 89, 124–32, 135, 166–75). In light of the Second Circuit's prior conclusions in this regard, the Court is compelled to find that these allegations create a sufficiently strong inference that Harding and SAI "knew" that Wachovia's oral and written representations in the marketing materials were materially misleading. *See King Cty. v. IKB Deutsche Industriebank AG*, 751 F. Supp. 2d 652, 665 (S.D.N.Y. 2010) ("A defendant's active participation in fraud creates more than a reasonable inference that it had knowledge of it."); *Anwar*, 728 F. Supp. 2d at 443 (finding knowledge sufficiently alleged against defendants who "knew that [co-defendants] uniformly represented to [p]laintiffs that they employed thorough due diligence, monitoring and verification of Fund managers . . . and strict risk controls – representations which [defendants] knew to be false or were willfully blind to the evident falsity" (brackets omitted)). For the same reasons, Plaintiffs' allegations that Wachovia used Longshore as a dumping ground for deteriorating assets (FAC ¶¶ 178–85) and was aware of and assisted with Magnetar's efforts to influence the selection of collateral for Octans and Sagittarius (*id.* ¶¶ 58–61, 98–99, 104–10, 114, 141–58) create a sufficiently strong inference that Wachovia knew that Harding's and SAI's representations to Plaintiffs in the marketing materials were misleading (*id.* ¶¶ 89, 124–32, 134, 166–73). Accordingly, the Court finds that Plaintiffs have satisfied the actual knowledge element as well.

Next, the Court considers whether Plaintiffs have sufficiently alleged substantial assistance on the part of the various Defendants, the third element of an aiding and abetting claim. "A defendant provides substantial assistance only if [it] affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 486 (S.D.N.Y. 2015) (brackets omitted) (quoting *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005)); *see also Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98-cv-4960 (MBM), 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999). In addition, the substantiality of a defendant's assistance turns on "whether 'the action of the aider and abettor proximately caused the harm on which the primary liability is predicated.'" *Martin Hilti Family Tr.*, 137 F. Supp. 3d at 486 (quoting *J.P. Morgan Chase*, 406 F. Supp. 2d at 256); *see also In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 560–61 (S.D.N.Y. 2005) (same). "In other words, plaintiffs 'must allege also that their injury was a direct or reasonably foreseeable result of the [aider and abettor's] conduct.'" *Martin Hilti Family Tr.*, 137 F. Supp. 3d at 486 (quoting *Fraternity Fund Ltd.*, 479 F. Supp. 2d at 371).

In this case, Wachovia provided substantial assistance to SAI's and Harding's fraud by providing financing for all three transactions and helping Magnetar influence the structure of Octans and Sagittarius, among other things. (FAC ¶¶ 20–21, 98–99, 104–10, 114, 141–58, 238–39, 243–44.) Harding and SAI allegedly assisted Wachovia's fraud by failing to independently select the CDOs' collateral and by selecting risky investments for the benefit of Wachovia and Magnetar. (*Id.* ¶¶ 7, 93–107, 141–46, 151, 155–56, 240, 245.) Once again, given the Second Circuit's holding with respect to the sufficiency of the underlying fraud claim, there can be little doubt as to the sufficiency of Plaintiffs' allegations that each Defendant substantially assisted the

others and that Plaintiffs' losses from investments in the CDOs directly – or reasonably foreseeably – resulted from these acts. *See WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d at 561 (finding underwriter's "conduct in assisting WorldCom to raise money based on false financial statements" constituted actionable substantial assistance).

Defendants argue that Plaintiffs' aiding and abetting claim impermissibly duplicates their fraud claim (Mem. 7), and so it may seem at first glance. However, as many federal and state cases have recognized, Plaintiffs may plead aiding and abetting fraud in the alternative to their underlying fraud claim, *see King Cty.*, 751 F. Supp. 2d at 666; *SEC v. Pentagon Capital Mgmt.*, 612 F. Supp. 2d 241, 266 (S.D.N.Y. 2009); *Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 581 (1st Dep't 2015); *Weinberg v. Mendelow*, 113 A.D.3d 485, 487 (1st Dep't 2014); *but see 380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 232 (S.D.N.Y. 2008) (cited in Mem. 7) (relying on unpublished state trial court decision for the proposition that, as a matter of law, plaintiff may not maintain an aiding and abetting claim against a party sufficiently alleged to be liable as a principal). Furthermore, New York courts have been particularly reluctant to dismiss aiding and abetting claims at the pleading stage, so long as plaintiffs do not merely allege that defendants "aided and abetted [their] own fraud," *Landesbank Baden-Württemberg*, 14 F. Supp. 3d at 514, but rather, premise the aiding and abetting claims "on different conduct," *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 553 (E.D.N.Y. 2015). Here, notwithstanding the overlap between the fraud and aiding and abetting claims, Plaintiffs also allege acts of substantial assistance that are distinct from the alleged misrepresentations and omissions that are actionable under Plaintiffs' claim for fraud. *Compare* FAC ¶¶ 203–04 (premising fraud claims on Defendants' misrepresentations and omissions in marketing and sales documents), *with id.* ¶¶ 238–39, 243–44 (premising aiding and abetting claim against Wachovia

on WCM's service as initial purchaser of the CDOs' notes and WB's provision of financing for the CDOs, among other things), ¶¶ 240, 245 (premising aiding and abetting liability against collateral managers on their selection of risky investments at Wachovia's and Magnetar's behest).

Defendants also argue that "routine" acts such as providing financing, preparing offering materials, and engaging in other "generic marketing or structuring activities connected to the transaction" are not actionable on an aiding and abetting claim. (Mem. 7–8, 11; Reply 5.) The Court finds Defendants' arguments to be unpersuasive, since "[t]he critical test [for substantial assistance] is not . . . whether the alleged aiding and abetting conduct was routine, but whether it made a substantial contribution to the perpetration of the fraud." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 511 (S.D.N.Y. 2009) (quoting *J.P. Morgan Chase Bank*, 406 F. Supp. 2d at 257). The Court finds that Wachovia's service as initial purchaser of the CDOs' notes, its provision of financing for the CDOs, and Harding's and SAI's management of the CDOs' portfolios substantially contributed to the perpetration of the alleged fraud. Accordingly, the Court finds that Plaintiffs have sufficiently alleged all three elements of aiding and abetting fraud against each Defendant.

### C. Conspiracy to Commit Fraud

The Court next turns to Plaintiffs' claim for conspiracy to defraud. Defendants argue, among other things, that Plaintiffs' conspiracy claim improperly duplicates their other tort claims. (Mem. 12.) The Court agrees.

Under New York law, a cause of action for "conspiracy may be alleged to connect a defendant" to a sufficiently pleaded tort claim, but plaintiffs may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co.*

*v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005) (internal quotation marks omitted); *accord Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985) (dismissing as improperly duplicative a conspiracy claim that "added no new allegations to those of counts 1–6 except to reiterate that [defendants] had conspired to commit the acts heretofore described"). Thus, a cause of action for civil conspiracy that "offers no new allegations beyond those alleged in support of" other tort claims alleged elsewhere must "be dismissed as duplicative." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 315 (S.D.N.Y. 2013); *accord Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F. App'x 433, 434 (2d Cir. 2009); *Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, No. 11-cv-4416 (LAK) (GWG), 2012 WL 1193353, at *9 (S.D.N.Y. Apr. 10, 2012); *In re Magnesium Corp. of Am.*, 399 B.R. 722, 775–76 (Bankr. S.D.N.Y. 2009); *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-cv-9623 (RWS), 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007), *aff'd sub nom. Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009); *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 332 (Bankr. S.D.N.Y. 1999); *Kew Gardens Hills Apt. Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 35 A.D.3d 383, 386 (2d Dep't 2006); *Am. Baptist Churches of Metro. N.Y. v. Galloway*, 271 A.D.2d 92, 101 (1st Dep't 2000).

Here, a brief perusal of the Amended Complaint reveals that Plaintiffs' conspiracy claims add no new allegations distinct from those underlying their fraud and aiding and abetting fraud claims. (*Compare* FAC ¶¶ 202–11 (alleging that Defendants engaged in fraud by making misrepresentations concerning CDOs for the purpose of inducing Plaintiffs to purchase the Octans, Sagittarius, and Longshore CDOs, thereby directly and proximately causing Plaintiffs' injuries), *with id.* ¶¶ 228–29 (alleging that Defendants engaged in conspiracy to defraud by doing same)). Because Plaintiffs' cause of action for conspiracy "add[s] no new allegations" to their

other tort claims except "to reiterate that [defendants] had conspired to commit the acts heretofore described," *Durante Bros. & Sons, Inc.*, 755 F.2d at 251, the Court dismisses their conspiracy cause of action as improperly duplicative.

The Court recognizes some tension between its decision to deny Defendants' motion to dismiss the aiding and abetting claim and its decision to grant Defendants' motion to dismiss the conspiracy claim, since both conspiracy and aiding and abetting are secondary theories of liability. However, as discussed in the previous section, Plaintiffs allege acts of substantial assistance that are distinct from the alleged misrepresentations and omissions that are actionable under Plaintiffs' fraud claims. Plaintiffs' cause of action for conspiracy, by contrast, merely "reallege[s]" the fraud and aiding and abetting claims asserted elsewhere. *See Aetna Cas. & Sur. Co.*, 404 F.3d at 591; *see also Neogenix Oncology, Inc.*, 133 F. Supp. 3d at 553 ("Under New York law, courts will dismiss claims that are entirely duplicative when they are premised on the same conduct and seek the same relief."). In cases in which Plaintiffs' aiding and abetting claims overlap with their conspiracy claims, New York courts have allowed the aiding and abetting claims to proceed, but have dismissed as duplicative the conspiracy claims. *See Amusement Indus., Inc.*, 2012 WL 1193353, at *9; *Kew Gardens Apt. Owners, Inc.*, 35 A.D.3d at 386. And as previously discussed, a substantial number of New York courts have allowed duplicative aiding and abetting claims to proceed in the alternative at the pleading stage, *see IKB Deutsche Industriebank AG*, 751 F. Supp. 2d at 666; *Allenby, LLC*, 134 A.D.3d at 581; *Weinberg*, 113 A.D.3d at 487, but a series of Second Circuit decisions forecloses the Court's doing the same with respect to Plaintiffs' conspiracy claims, *Aetna Cas. & Sur. Co.*, 404 F.3d at 591; *Durante Bros. & Sons, Inc.*, 755 F.2d at 251. Accordingly, Plaintiffs' conspiracy claim must be dismissed as duplicative.

## IV. CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted in part and denied in part. Specifically, Defendants' motion to dismiss is granted with respect to Count III, Plaintiffs' claim for conspiracy to commit fraud, and is denied with respect to Count II, Plaintiffs' claim for rescission, and Count IV, Plaintiffs' claim for aiding and abetting fraud. The Clerk is respectfully directed to terminate the motion pending at docket number 106. The parties are reminded that the deadline to complete discovery is April 3, 2017, and if either party contemplates filing a post-discovery motion, pre-motion letters are to be submitted by that date. (Doc. No. 152.) As previously ordered, the Court will hold a post-discovery conference on April 21, 2017 at 11:00 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse located at 40 Foley Square, New York, New York. (*Id.*)

SO ORDERED.

Dated:       September 29, 2016
                New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/16