UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORELEY FINANCING (JERSEY) NO. 3
LIMITED, *et al.*,

                      Plaintiffs,

-v-

WELLS FARGO SECURITIES, LLC, *et al.*,

                      Defendants.

No. 12-cv-3723 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

       Third-Party Defendant IKB Deutsche Industriebank AG ("IKB AG") moves (1) to dismiss the Third-Party Complaint pursuant to Rule 12(b)(6), or, alternatively (2) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to dismiss is denied, and the motion for summary judgment is denied without prejudice to renewal following supplemental briefing by the parties.

## I. BACKGROUND

### A. Facts[1]

       The Court presumes the parties' familiarity with the underlying facts and procedural history of this case and offers only a short summary of each for the purposes of this motion. Plaintiffs – Loreley Financing (Jersey) Numbers 3, 5, 15, 28, and 30 Limited (the "Loreleys") – are special-purpose investment entities that invested approximately $163 million in 2006 and 2007 in three collateralized debt obligations (the "CDOs") known as Octans II CDO ("Octans"),

---

[1] The following facts are taken from the Third-Party Complaint. (Doc. No. 123 ("Third-Party Complaint" or "TPC").) The Court also cites allegations from the Loreleys' Amended Complaint for context. (Doc. No. 84 ("First Amended Complaint" or "FAC").) In ruling on the motions, the Court has considered IKB AG's memorandum in support of dismissal (Doc. No. 148 ("Mem.")), Third-Party Plaintiffs' opposition brief (Doc. No. 161 ("Opp'n")), IKB AG's reply (Doc. No. 171 ("Reply")), and the declarations attached thereto.

Sagittarius CDO I ("Sagittarius"), and Longshore CDO Funding 2007-3 ("Longshore"). The three CDOs were created, marketed, and sold by Wachovia Capital Markets, LLC, Wachovia Bank, N.A., and non-party Wachovia Securities International Limited (collectively, "Wachovia"), which are predecessors in interest to Wells Fargo Securities, LLC and Wells Fargo Bank, N.A. (collectively, "Wells Fargo"). (FAC ¶¶ 20–21.) Structured Asset Investors LLC ("SAI"), which was affiliated with Wachovia, served as collateral manager for Sagittarius and Longshore (*id.* ¶ 23), and Harding Advisory LLC ("Harding") served as collateral manager for Octans (*id.* ¶ 22). Between 2007 and 2008, all three CDOs went into default and failed to make payments to the Loreleys. (*Id.* ¶¶ 119, 163, 191.) In the underlying suit, the Loreleys allege that Wachovia and the collateral managers committed fraud or, in the alternative, aided and abetted fraud in connection with the three CDOs.

According to the Third-Party Complaint filed by Wells Fargo and the collateral managers (hereinafter "WF/CM"), IKB AG and its wholly-owned subsidiary, IKB Credit Asset Management GmbH ("IKB CAM," and together with IKB AG, "IKB"), "created" the Loreleys as "purchase vehicles" for IKB's investments. (TPC ¶¶ 1, 21.) As such, the Loreleys "had no function other than to act as purchasers for IKB's off-balance-sheet investments." (*Id.* ¶ 22.) Thus, IKB served as the Loreleys' investment advisors, negotiated the Loreleys' investments in the CDOs, made the decisions for the Loreleys to invest in the CDOs, and provided liquidity to the Loreleys to make investments in the CDOs. (TPC ¶¶ 1–4, 23–24, 27–28, 32, 34.) WF/CM alleges that in 2006 and 2007 IKB "abandoned performing even minimal due diligence in order to complete investments as quickly as possible" so that IKB could obtain securities arbitrage on its CDO investments, notwithstanding the obvious and significant risks associated with the Loreleys' investments consummated during that time, including the CDOs. (*Id.* ¶¶ 25, 37.)

B.  Procedural History

On November 1, 2011, the Loreleys filed suit against WF/CM in New York State Supreme Court, New York County for fraud, aiding and abetting fraud, conspiracy to commit fraud, and rescission, among other things.  (Doc. No. 1 ¶ 3.)  On May 10, 2012, WF/CM removed the action to this Court pursuant to the Edge Act, 12 U.S.C. § 632, and on March 28, 2013, the Court granted WF/CM's motion to dismiss the case in its entirety with prejudice, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-3723 (RJS), 2013 WL 1294668, at *1 (S.D.N.Y. Mar. 28, 2013).  On July 24, 2015, the United States Court of Appeals for the Second Circuit reversed in part the Court's 2013 Opinion, vacated the judgment of dismissal as to the Loreleys, and remanded the case for further proceedings consistent with its opinion.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015). On August 17, 2015, the Court received the mandate from the Second Circuit (Doc. No. 74), and on September 11, 2015, the Loreleys filed their Amended Complaint (Doc. No. 84).  On September 29, 2016, the Court granted WF/CM's motion to dismiss the Loreleys' claim for conspiracy to commit fraud but denied the motion with respect to the Loreleys' claims for rescission and aiding and abetting fraud.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-3723 (RJS), 2016 WL 5719749 (S.D.N.Y. Sept. 29, 2016).[2]  Although the Loreleys' suit remains pending, the Court issued an order on October 28, 2016 staying discovery while WF/CM awaits relevant discovery located abroad.  (Doc. Nos. 183, 195.)

On February 16, 2016, WF/CM filed the Third-Party Complaint against IKB.  (Doc. No. 123.)  On June 6, 2016, IKB filed the instant motions for dismissal and summary judgment, which were fully briefed on July 22, 2016.  (Doc. Nos. 147, 161, 171.)  IKB makes three

---

[2] Since WF/CM did not move to dismiss the Loreleys' fraud claim in their partial motion to dismiss, the Court did not rule on the viability of this cause of action in its September 29, 2016 Opinion.

3

arguments in its brief. First, IKB asserts that WF/CM's contribution claim should be dismissed because it impermissibly duplicates WF/CM's defense in the underlying action. (Mem. 16–20.) Second, IKB argues that the contribution claim should be dismissed because of WF/CM's failure to adequately allege tort liability on IKB's part, as required to sustain a contribution claim under New York law. (Mem. 13.) Third, IKB argues, in the alternative, that summary judgment should be granted based on the Loreleys' and IKB's February 27, 2012 agreement to "irrevocably release[] and waive[] any and all claims against each other." (Mem. 20 (quoting Doc. No. 149-4 (the "Release")) § 3.1).)

On December 27, 2016, the Court, after having carefully reviewed the language of the Release, ordered IKB to file copies of various documents – including the Intercreditor and Asset Distribution Agreement, the Deutsche Confirmation, the Citibank Confirmation, the KfW Confirmation, and all other documents referenced in Section 3.2 of the Release – that had neither been produced to WF/CM nor filed on ECF. (Doc. No. 191.) IKB subsequently filed these documents, which collectively exceed 1,600 pages, on January 6, 2017 and January 13, 2017. (Doc. Nos. 199, 201.)

### III. MOTION TO DISMISS

#### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

### B. Discussion

#### 1. Duplication

Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. "Contribution is a remedy available 'to [a]ny tortfeasor who pays more than its fair share of a judgment – as apportioned by the factfinder in terms of relative culpability' against other joint tortfeasors." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 556 (1992)). "The crucial element in allowing a claim for contribution to proceed is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" *Id.* (quoting *Raquet v. Braun,* 90 N.Y.2d 177, 183 (1997)).

IKB argues that dismissal under Rule 12(b)(6) is appropriate because WF/CM's contribution claim is identical to their defense in the underlying action – namely, that any losses by the Loreleys are attributable to IKB, the entity to whom WF/CM communicated the alleged misrepresentations regarding the CDOs.  (Mem. 16–20; Doc. No. 116 at 45–46.)  Specifically, IKB argues that "a finding that IKB was reckless or negligent in relying on [WF/CM's] alleged misrepresentations" in the underlying action would "obviate the need" for WF/CM to seek contribution, since it would follow, *a fortiori*, that the Loreleys did not reasonably rely on WF/CM's misrepresentations.  (Mem. 17.)

It is true that a contribution claim cannot be brought where it "rais[es] the same issue raised as a defense to plaintiff's complaint."  *Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 266 (S.D.N.Y. 2000).  Thus, dismissal of a third-party complaint may be warranted where, as alleged here, a "third-party defendant served as an agent to the plaintiff throughout the transaction in question, because any culpable conduct of the third-party defendant would be attributable to the plaintiff through agency principles."  *Ames Assocs. v. ABS Partners Real Estate LLC*, No. 06-cv-928 (TPG), 2010 WL 890034, at *4 (S.D.N.Y. Mar. 3, 2010).  This is because a party ordinarily "is bound by the acts and omissions of [its agent], and suffers the consequences of any missteps made by [the agent]" within the scope of its agency.  *N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Tex.*, 115 F. Supp. 2d 348, 351 (E.D.N.Y. 2000); *see also Gabriel Capital, L.P.*, 137 F. Supp. 2d at 266 ("Because culpable conduct by an agent is imputed to the principal, any recklessness by [plaintiff's agent] . . . would eliminate [defendant's] liability, and thus obviate the need for contribution.").

However, courts have recognized an exception to this doctrine when the third-party defendant acts outside of the scope of its agency.  *See A.I.A. Holdings, S.A. v. Lehman Bros.*, No.

6

97-cv-4978 (LMM), 2002 WL 1359726, at *2 (S.D.N.Y. June 20, 2002) (declining to dismiss contribution counterclaims, since the question of whether plaintiffs' agents "were acting within the scope of the alleged agency relationship, and therefore whether their knowledge is imputable to the plaintiffs they allegedly advised, is an issue that has not yet been decided in this litigation"). Thus, while the acts and knowledge of an agent acting within the scope of its agency are ordinarily imputable to the principal, this presumption is rebutted when an agent has "'*totally abandoned* his principal's interests'" and "'act[ed] *entirely* for his own or another's purposes,' not the corporation's." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 468 (2010) (quoting *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784–85 (1985)).

While the Court recognizes that the adverse-interest exception is among the "most narrow of exceptions" under New York law, *id.* at 466, the Court finds that the Third-Party Complaint plausibly alleges that IKB totally abandoned the Loreleys' interests and acted entirely for its own purposes by purchasing the CDOs "as quickly as possible" without performing "even minimal due diligence, notwithstanding the substantial risks associated with the Loreleys' investments in the CDOs, so that IKB could achieve securities arbitrage. (TPC ¶ 37.) Accordingly, based on the facts alleged in the Third-Party Complaint, it is not out of the question that the Loreleys could prevail on their fraud claim without IKB's conduct being imputed to the Loreleys. *Cf. Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (2016) (noting that a party may prevail on a fraud claim based on misrepresentations made to a third party, where defendant made the statement "with the intent that it be communicated to the plaintiff and that the plaintiff rely on it"). Therefore, the Court finds that it is premature to conclude that WF/CM's contribution claim is necessarily duplicative of WF/CM's defenses in the main action. Therefore, IKB's motion to dismiss on this ground is denied.

2. Sufficiency of Contribution Allegations

Next, IKB argues that its obligations to the Loreleys were "purely contractual," and therefore the contribution claim is barred because under New York law, "contribution is not available against a third party where that party's actions, if proven, constitute a breach of contract." (Mem. 13.) Indeed, "the existence of some form of tort liability is a prerequisite" to application of New York's contribution statute. *Bd. of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 28 (1987). In other words, "New York does not authorize contribution as a result of a third-party's breach of contract," *Ames Assocs.*, 2010 WL 890034, at *3, and "[i]n order to impose tort liability in a commercial case, 'there must be some identifiable source of a special duty of care,'" such as a fiduciary duty, *J.P. Morgan Sec. Inc. v. Ader*, 127 A.D.3d 506, 507 (1st Dep't 2015) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)).

Here, WF/CM's contribution claim is premised on alleged breaches of fiduciary duty by IKB to the Loreleys. (Opp'n 10–15.) Specifically, WF/CM alleges that IKB, as the creators and operators of the Loreleys, "had such a level of influence and control over the Loreleys' day-to-day operations" that it assumed fiduciary duties to the Loreleys. (Opp'n 10; *see also* TPC ¶ 22 (alleging that "[t]he Loreleys had no function other than to act as purchasers for IKB's off-balance-sheet investments"); ¶ 23 (alleging that IKB "created and controlled the Loreleys[,] . . . negotiated on their behalf, and . . . determined what and how much each Loreley would purchase").) Indeed, at least one court in this district has concluded under an analogous set of facts that a financial institution owed fiduciary duties to special purpose investment vehicles that "exist[ed] only on paper and only for the purpose of . . . engag[ing] in structured finance transactions" on the financial institution's behalf. *In re Parmalat Sec. Litig.*, 684 F. Supp. 2d

453, 458–59 (S.D.N.Y. 2010), *aff'd sub nom.*, *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73 (2d Cir. 2011).

IKB nonetheless points to two agreements it entered with the Loreleys in March 2002 and December 2006 – the Investment Advisory and Tradeable Securities Investment Advisory Agreements – that include unambiguous disclaimers of any fiduciary relationship. (Mem. 8, 14–15; *see also* Doc. Nos. 149-1 § 5.4, 149-2 § 5.4 (proving that IKB "shall not be subject to any fiduciary or other implied duties").) Under New York law, "no fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply," *LBBW Lux. S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 523 (S.D.N.Y. 2014), and courts applying New York law routinely dismiss claims of fiduciary breach in the face of a "'clear and unambiguous disclaimer of a fiduciary relationship' in the parties' contractual agreements," *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 415 (E.D.N.Y. 2012) (quoting *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F.Supp.2d 257, 269 (S.D.N.Y. 2012)); *accord Summit Properties Int'l, LLC v. Ladies Prof'l Golf Ass'n*, No. 07-cv-10407 (LBS), 2010 WL 2382405, at *7 (S.D.N.Y. June 14, 2010); *Asian Veg. Research & Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1178 (S.D.N.Y. 1996).

The Court nonetheless finds that IKB's arguments must be rejected at this stage as premature. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Specifically, the Court is limited to considering the complaint, as well as: (1) "documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint," (2) "matters of which judicial notice may be taken," and (3) documents

integral to the complaint on whose "terms and effect" plaintiff relied "in drafting the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (internal citations and quotation marks omitted).  Here, the Investment Advisory and Tradeable Securities Investment Advisory Agreements were neither attached to nor referenced in the complaint and are not public documents subject to judicial notice.  With respect to the third exception, an extrinsic document is, as a general matter, only integral to a pleading that "heavily rel[ies] on [its] terms and effect." *Goel*, 820 F.2d at 560.  Clearly, WF/CM did not rely on the Investment Advisory and Tradeable Securities Investment Advisory Agreements in drafting the Third-Party Complaint, since these documents were not even produced to them until after the Third-Party Complaint was filed. (Doc. No. 174 at 4 & n.2); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); *cf. LBBW Lux. S.A.*, 10 F. Supp. 3d at 510–11 & n.6, 523–24 (granting motion to dismiss based on fiduciary disclaimer in agreements that were "integral to the complaint").

Accordingly, the Court concludes that it cannot consider the Investment Advisory and Tradeable Securities Investment Advisory Agreement on this motion, even if these documents would be dispositive at a later stage.  Thus, it would also be premature to reject, as a matter of law, WF/CM's contribution claim on this basis, since "[a]bsent an effective disclaimer the existence of fiduciary duties is a factual question 'not susceptible to resolution on a motion to dismiss.'"  *LBBW Lux. S.A.*, 10 F. Supp. 3d at 523 (quoting *Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.*, 94-cv-8559 (LAP), 1996 WL 675795, at *7 (S.D.N.Y. 1996)).

IV. SUMMARY JUDGMENT

A. Legal Standard

The Court next turns to IKB's alternative motion for summary judgment. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477

U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## B.  Discussion

Under New York law, "[a] release given in good faith by the injured person to one tortfeasor . . . relieves him from liability to any other person for contribution." N.Y. G.O.L. § 15–108[b].  There is "substantial case law" in which courts have granted motions to dismiss pursuant to Rule 12(b)(6) and summary judgment pursuant to Rule 56 prior to the close of discovery based on the unambiguous language of a valid release.  *In re Refco Inc. Sec. Litig.*, No. 07-md-1902 (JSR), 2012 WL 4053939, at *4 (S.D.N.Y. Aug. 8, 2012) (collecting cases); *Sabater v. Lead Indus. Ass'n, Inc.*, No. 00-cv-8026 (LMM), 2001 WL 1111505, at *5 (S.D.N.Y. Sept. 21, 2001).

A release is valid under Section 15-108 if:  "(1) the plaintiff or claimant receives, as part of the agreement, monetary consideration greater than one dollar; (2) the release or covenant completely or substantially terminates the dispute between the plaintiff or claimant and the person who was claimed to be liable; and (3) such release or covenant is provided prior to entry of judgment." N.Y. G.O.L. § 15-108(d).  In short, a valid release operates as an "automatic bar of all further contribution claims against a settling tortfeasor from other tortfeasors." *Ades v. Deloitte & Touche*, No. 90-cv-4959 (RWS), 1993 WL 362364, at *17 (S.D.N.Y. Sept. 17, 1993); *accord Giglio v. NTIMP, Inc.,* 86 A.D.3d 301, 311–12 (2d Dep't 2011). "It is well established

that '[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law.'" *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (*Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)). "As with contracts generally, the courts must look to the language of a release – the words used by the parties – to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous." *Wells v. Shearson Lehman/Am. Express, Inc.*, 72 N.Y.2d 11, 19 (1988). "The scope of a general release depends on the controversy being settled and the purpose for which the release is actually given." *Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC*, 61 A.D.3d 554, 555 (1st Dep't 2009). "[I]f from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands or obligations, the instrument will be operative as to those matters alone." *Id.*

Here, IKB has pointed to a release agreement entered on February 27, 2012, in which the Loreleys and IKB agreed in Section 3.1 to "irrevocably release[] and waive[] any and all claims against each other." (Release § 3.1.) However, the broad provision in Section 3.1 is subject to a series of enumerated exceptions in Section 3.2, which reference numerous other agreements between the parties. (*Id.* § 3.2 (excluding from the release claims brought under the Intercreditor and Asset Distribution Agreement, the Deutsche Confirmation, the Citibank Confirmation, and the KfW Confirmation, among other agreements).) IKB neglected to produce most of these agreements to WF/CM and failed to attach them to its summary judgment motion (*see* Doc. No. 163 ¶¶ 9, 12). Instead, IKB conclusorily asserted in its opening and reply briefs that "[t]he enumerated 'Excluded Claims' in the Release Agreement § 3.2 are not matters relevant" to this suit. (Mem. 23 n.20; Reply 9 n.13.)

But as WF/CM correctly argues, it is impossible for them or for the Court "to decipher the meaning and scope" of the relevant exemptions under Section 3.2 of the Release without being able to review these other documents that are cross-referenced. (Doc. No. 163 ¶ 4.) Although IKB has since produced these various agreements (*see* Doc. Nos. 199, 201), the Court finds that it would be inappropriate to grant IKB summary judgment based on these voluminous submissions without first granting WF/CM the opportunity to review them and make further submissions regarding the meaning and scope of the Release. Accordingly, the Court denies IKB's motion for summary judgment without prejudice to renewal.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that IKB's motion is DENIED WITHOUT PREJUDICE TO RENEWAL as a motion for summary judgment following completion of discovery. The Clerk is respectfully directed to terminate the motion pending at docket number 147.

SO ORDERED.

Dated:     March 10, 2017
           New York, New York

                                    _____
                                    RICHARD J. SULLIVAN
                                    UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/10/17